UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED-CLERK
U.S. DISTRICT COURT

02 SEP -6 AM II: 10

TX EASTERN-BEAUMONT

BY _Barbara S_
_Thurman_

| | |
|---|---|
| CHRISTY McCARTHY, by and through § <br> her next friend, Jamie Travis; § <br> TODD GORDON, by and through his next § <br> friend, Trisha Gordon; ALLISON PRATT, § <br> by and through her next friend, Paula Pratt; § <br> GAIL TRUMAN, by and through her next § <br> friend, Ken Truman; JIM FLOYD Jr., by § <br> and through his next friend, Jim Floyd, Sr.; § <br> SAM LINDSAY, by and through his next § <br> friend, Betty Lindsay; OSHEA BROOKS; § <br> JOE RAY COMACHO; § <br> MICHA CHASTAIN, by and through § <br> his next friend, Lori Chastain; § <br> SUE ANN ORTIZ; AL, by and through § <br> her next friend, LL; and § <br> The ARC of Texas, on behalf of its § <br> members, and for Those Similarly Situated, § <br> § <br>               Plaintiffs, § <br> § <br> v. § <br> § <br> DON A. GILBERT, in his official capacity § <br> as Commissioner of the Texas Health § <br> and Human Services Commission; § <br> KAREN F. HALE, in her official capacity § <br> as Commissioner of the Texas Department § <br> of Mental Health and Mental Retardation; § <br> and JAMES R. HINE, in his official § <br> capacity as Commissioner of the Texas § <br> Department of Human Services, § <br> § <br>               Defendants. § | **M 1 0 2 C V 0 6 0 0** <br><br> CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiffs, Christi McCarthy, by and through her next friend, Jamie Travis; Todd

Gordon, by and through his next friend, Trisha Gordon; Allison Pratt, by and through her

next friend, Paula Pratt; Gail Truman, by and through her next friend, Ken Truman; Jim

Floyd Jr., by and through his next friend, Jim Floyd, Sr.; Sam Lindsay, by and through his

next friend, Betty Lindsay; Oshea Brooks; Joe Ray Comacho; Micha Chastain, by and

through his next friend, Lori Chastain; Sue Ann Ortiz; and The Arc of Texas, on behalf of

its members, and for those similarly situated, file this Original Complaint and respectfully

show as follows:

## I.  INTRODUCTION

1.      Plaintiffs bring this action to challenge Defendants' failure to provide Plaintiffs

and other Texans with mental retardation and developmental disabilities[1] with community-

based living options and services to which they are legally entitled and that meet their needs.

Unless more of these options and services are provided, Plaintiffs and similarly situated

Texans will either remain needlessly confined or be forced to leave their family and

community and move into an institution.

2.      By failing to implement the Home and Community-Based ("Medicaid") waiver

program in a way that provides Plaintiffs with placement options and services within a

reasonable period of time, Defendants not only violate federal law, but expose Plaintiffs to

the risk of, or perpetuate the need for, unnecessary institutionalzation.

3.      The Supreme Court has held that "unjustified institutional isolation of persons

with disabilities is a form of discrimination," *Olmstead v. L.C., ex rel Zimring*, 119 S. Ct.

2176, 2187 (1999), and is prohibited by the Americans with Disabilities Act ("ADA"), 42

---

[1] Developmental disabilities other than mental retardation include "related conditions" such as spina bifida and cerebral palsy.

U.S.C. §§ 12101 *et. seq.* Defendants are obligated to "administer services, programs and activities [i.e., Texas Medicaid] in the most integrated setting appropriate to the needs" of persons with disabilities. 42 U.S.C. § 12132 and 29 U. S. C. § 794 as implemented by 28 C.F.R. § 35.130(d) and 28 C.F.R. § 41.51(d). With appropriate community-based long-term care and services, available under a lawful Medicaid waiver program, Plaintiffs could live in integrated settings in their own homes and communities.

4.     Plaintiff class members are not receiving the services they need to remain in the most integrated setting. Instead, they are being institutionalized or confined at home without needed services.

5.     Therefore, Plaintiffs seek to address Defendants' systematic and continuing failure to provide necessary services in a reasonably prompt manner and to provide these services in the most integrated setting appropriate. Defendants' actions deprive the individual Plaintiffs of greater independence, integration into the community, and a better quality of life.

## II.  JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action and over the Defendants pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3), and 1343 (a)(4). The amount in controversy exceeds the minimum jurisdictional limits of this Court. Plaintiffs' claims are authorized by 42 U.S.C. § 1396 *et seq.*, 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. § 301 *et seq.*, and 42 U.S.C. §§ 12115 *et seq.* Declaratory and injunctive relief is authorized under 28 U.S.C. §§ 2201 and 2202, as well as rules 57 and 65 of the Federal Rules of Civil Procedure.

7.     Venue is proper in this Court under 28 U.S.C. § 1391 because part of the claims arose within this District and Division, and Defendants operate in this District and Division.

### III.  PARTIES

8.     Plaintiff Christi McCarthy is 22 years-old.  She lives at home with her family in West Columbia, Texas.  Ms. McCarthy has cerebral palsy, diplegia, and mild mental retardation.  She uses a wheelchair.  She is a Medicaid recipient and has a disability within the meaning of the ADA.  Ms. McCarthy qualifies for HCS waiver services and would be able to remain in a less restrictive setting with the proper support and services.

9.     Plaintiff Todd Gordon is 19 years-old and lives at home with his family in Alvin, Texas.  He has fragile X syndrome.  He is a Medicaid recipient and has a disability within the meaning of the ADA.  Mr. Gordon qualifies for HCS waiver services and would be able to remain in a less restrictive setting with waiver supports and services.

10.     Plaintiff Allison Pratt lives at home with her family near Beaumont, Texas.  She is 22 years old and has mental retardation.  Ms. Pratt is a Medicaid recipient and has a disability within the meaning of the ADA.  Ms. Pratt's need for services can be met in her home, thereby avoiding the need for her to be institutionalized.

11.     Plaintiff Gail Truman is 40 years old.  She resides with her parents in Friendswood, Texas.  Ms. Truman has mental retardation.  She is a Medicaid recipient and has a disability within the meaning of the ADA.  Ms. Truman qualifies for HCS waiver services and is able to remain living in a less restrictive setting with waiver supports and services.

12.     Jim Floyd, Jr. is 43 years-old and lives in Dickenson, Texas, with his mother and father. Mr. Floyd has autism. Mr. Floyd's need for services can be met in his home, thereby avoiding the need for him to be institutionalized. Mr. Floyd qualifies for Medicaid services and has a disability within the meaning of the ADA.

13.     Sam Lindsay, Jr. is 54 years-old and lives in Marshall, Texas, with his mother and father. Mr. Lindsay has mental retardation. Mr. Lindsay's need for services can be met in his home, which will avoid him being institutionalized. Mr. Lindsay qualifies for Medicaid services and has a disability within the meaning of the ADA.

14.     Plaintiff Oshea Brooks is 21 years-old. He lives in an ICF/MR facility in Rockport, Texas. Mr. Brooks has cerebral palsy, diplegia, and mild mental retardation. He uses a wheelchair, and his treatment team considers him to be legally competent. He is a Medicaid recipient and has a disability within the meaning of the ADA. Mr. Brooks qualifies for HCS waiver services and would be able to live in a less restrictive setting with the proper support and services.

15.     Plaintiff Joe Ray Camacho is 32 years-old and lives in an ICF/MR facility in Rockport, Texas. At the age of 19, he had a motorcycle accident in which he suffered a closed head injury. As a result, he uses a wheelchair. Mr. Comacho has been living in his current ICF/MR placement since October 1995 and is considered legally competent by his treatment team. He is a Medicaid recipient and has a disability within the meaning of the ADA. Mr. Comacho qualifies for CLASS waiver services and would be able to live in a less restrictive setting with waiver supports and services.

16.    Plaintiff Micha Chastain is almost three-years-old and lives in Fort Worth, Texas, with his father and mother, Lori, his next friend in this proceeding. Before Micha was born, he experienced a cranial hemorrhage. As a result, he was born with cerebral palsy, seizures, a vision impairment, and a hearing impairment. Micha uses a wheelchair. Micha is a Medicaid recipient and has a disability within the meaning of the ADA. Micha's need for services can be met in his home, thereby avoiding the need for him to be institutionalized.

17.    Plaintiff Sue Ann Ortiz is 23 years-old. She lives in an ICF/MR facility in San Antonio, Texas. Ms. Ortiz has mild mental retardation. She also sees a psychologist. Ms. Ortiz has been living in her current ICF/MR placement for approximately five years and is considered legally competent. She is a Medicaid recipient and has a disability within the meaning of the ADA. Ms. Ortiz qualifies for HCS waiver services and is able to live in a less restrictive setting with waiver supports and services.

18.    AL is 14 years-old and lives in Austin, Texas, with her father and mother, LL, her next friend in this proceeding. AL was born with cerebral palsy; as a result, she uses a wheelchair. AL's need for services can be met in her home, thereby avoiding the need for her to be institutionalized. AL qualifies for Medicaid services and has a disability within the meaning of the ADA.

19.    The Arc of Texas is the oldest and largest nonprofit, volunteer organization in the State of Texas committed to expanding opportunities for people with mental retardation and other developmental disabilities to be included in their communities. The Arc works to support families, advance public policies, provide training programs, and build a statewide network of advocates. Since its establishment in 1950, the Arc of Texas has been

instrumental in the creation of virtually every program, service, right, and benefit that is now available to more than half a million Texans with mental retardation.  Today, the Arc continues to advocate for the inclusion of people with mental retardation and other developmental disabilities in all aspects of society.

20.     Defendant Don A. Gilbert is sued in his official capacity as Commissioner of the Texas Health and Human Services Commission ("THHSC").  The THHSC is the single state agency responsible for the Medicaid program in Texas and receives federal funds.  In Mr. Gilbert's capacity as Commissioner, he is charged with contracting with medical providers and delegating particular responsibilities to the Texas Department of Mental Health and Mental Retardation and the Texas Department of Human Services.  Don A. Gilbert is sued in his official capacity and may be served process at THHSC, 4900 North Lamar, 4th Floor, Austin, Texas 78711.

21.     Defendant Karen F. Hale is sued in her official capacity as the Commissioner of the Texas Department of Mental Health and Mental Retardation ("TDMHMR").  TDMHMR is statutorily responsible for providing Medicaid waiver services to eligible persons capable of living in community-based alternatives.  TDMHMR is responsible for administering two Medicaid waiver programs, including the Home and Community Services waiver.  Karen F. Hale is sued in her official capacity and may be served process at TDMHMR, 909 West 45th Street, Austin, Texas 78711-2668.

22.     Defendant James R. Hine is sued in his official capacity as the Commissioner of the Texas Department of Human Services ("TDHS").  TDHS' responsibilities include evaluating individuals who are mentally retarded and developmentally disabled for services.

James R. Hine is sued in his official capacity and may be served process at TDHS, 701 West 51st Street, Austin, Texas 78714-9030.

## IV.  STATEMENT OF FACTS

**Christy McCarthy**

23.     Christy McCarthy is 22 years-of-age and has been residing at her home in West Columbia, Texas.  She has recently graduated from high school and her family would very much like for her to remain at home.  However, Ms. McCarthy has been on the HCS waiting list for six years.  At the present rate, she would not receive a waiver slot for 21 more years. This is tragic in that her life expectancy is only 10 years.

24.     Pursuant to Defendant TDMHMR's procedures, Ms. McCarthy has requested HCS services.  Defendant TDMHR never evaluated her for HCS eligibility but instead put her on a waiting list.

25.     Ms. McCarthy's family believes that she needs to remain in a less restrictive setting.  They are committed to Ms. McCarthy's independence.

26.     As of the filing of this complaint, Ms. McCarthy is on the HCS waiting list. She has received no written notice from Defendant TDMHMR that the services she has requested are being denied or delayed.

27.     Providing waiver services for Ms. McCarthy at home  would cost considerably less than an ICF/MR placement.

**Todd Gordon**

28.    Todd Gordon is 19 years-of-age and has fragile X syndrome.  Mr. Gordon has been on the waiting list for 5 years.  He lives at home with his family but needs significant care.  Without this care, he is in danger of being institutionalized.

29.    Mr. Gordon was never told of his entitlement to an ICF/MR or evaluated for HCS eligibility.  Instead, Defendant TDMHMR put him on a waiting list and never informed him that he may be eligible for HCS waiver services.

30.    As of the filing of this complaint, Mr. Gordon is on the HCS waiting list.  He has received no written notice from Defendant TDMHMR that the services he has requested are being denied or delayed.

31.    Waiver services provided to Mr. Gordon could be provided at a cost that is significantly less than an ICF/MR placement.

**Allison Pratt**

32.    Allison Pratt, who is 22 years old, resides at home with her family.  She has Down syndrome but works at a local restaurant.  However, without waiver services she is at significant risk for institutionalization.

33.    Pursuant to Defendants' procedure, Ms. Pratt has requested HCS waiver services.  Defendants have not evaluated her for HCS eligibility but instead put her on a waiting list.  Ms. Pratt's family was never informed that she may be entitled to ICF/MR services.

34.     As of the filing of this complaint, Ms. Pratt is on the HCS waiting list. She has received no written notice from Defendants that the services she has requested are being denied or delayed.

**Gail Truman**

35.     Gail Truman is 40 years-of-age and resides with her parents, age 74 and 68. She has mental retardation. Her parents currently meet her needs, but without their support, Ms. Truman would be at significant risk of being institutionalized. She has been on the waiting list for approximately 6 years. Although her parents have lived their lives in an effort to insure that Ms. Truman was not institutionalized, their advancing age and the lack of waiver services means that this may not be avoided.

36.     Pursuant to Defendants' procedures, Ms. Truman requested HCS waiver services. As of the filing of this complaint, Ms Truman is on the HCS waiting list. She has received no written notice from Defendant TDMHMR that the services she has requested are being denied or delayed.

37.     Ms. Truman's waiver services could be provided at a cost that is significantly less than an ICF/MR placement.

**Jim Floyd**

38.     Jim Floyd lives with his mother and father. He is 43, and his parents are 68 and 64. Mr. Floyd has autism and is in need of waiver services to remain in the community. Because of the lack of waiver services, Jim Floyd's parents hope to outlive him, so as not to subject him to an institution.

39.     Pursuant to Defendants' procedures, Jim Floyd requested HCS waiver services approximately six years ago.  Defendants never evaluated him for HCS eligibility, but instead placed him a waiting list.

40.     As of the filing of this complaint, Jim Floyd is on the HCS waiting list.  He has received no written notice from Defendants that services he has requested are being denied or delayed.

**Sam Lindsay**

41.     Sam Lindsay lives with his mother and father.  He is 54, and his parents are 79 and 77.  Mr. Lindsay has mental retardation and is in need of waiver services to remain in the community.  However, as he has aged, he has become a management problem for his parents.

42.     Pursuant to Defendants' procedures, Mr. Lindsay requested HCS waiver services approximately five years ago.  Defendants never evaluated him for HCS eligibility, but instead placed him a waiting list.

43.     As of the filing of this complaint, Sam Lindsay is on the HCS waiting list.  He has received no written notice from Defendants that services he has requested are being denied or delayed.

**Oshea Brooks**

44.     Oshea Brooks is 21 years-of-age and has been institutionalized at the ICF/MR facility in Rockport, Texas, since September 1994.  He very much wants to leave his institutional placement for the privacy that a smaller residential setting offers and the individual freedom such a setting would provide.  Currently he shares a small room at his

facility.  He is unable to shop, go to the movies, or visit friends without getting permission and, in most cases, without a staff person accompanying him.  Moreover, he is only permitted to visit friends or family for one extended period each year of no more than ten consecutive days.

45.  Pursuant to Defendant TDMHMR's procedures, Mr. Brooks requested HCS services in June 1999.  Defendant TDMHR never evaluated him for HCS eligibility but instead put him on a waiting list.  When Mr. Brooks was admitted to his current ICF/MR placement in February 1994, he was never informed that he may also be eligible for HCS waiver services.  As a result, he has lost five years seniority on the waiting list.

46.  Mr. Brooks Qualified Mental Retardation Professional ("QMRP") believes that he needs to be in a less restrictive setting.  Moreover, she believes that he qualifies for HCS waiver services and that a foster care placement would provide him more freedom and independence.

47.  As of the filing of this complaint, Mr. Brooks is on the HCS waiting list.  He has received no written notice from Defendant TDMHMR that the services he has requested are being denied or delayed.

48.  It is the opinion of Mr. Brooks' QMRP that such a placement would cost considerably less than his current ICF/MR placement.

**Joe Ray Comacho**

49.  Joe Ray Comacho is 32 years-of-age and would like to leave his current facility placement and move back home with his mother.  Mr. Comacho wants more freedom, independence and privacy--things that are not available while he remains institutionalized.

However, under current circumstances, this will not happen. He has only been on the HCS waiver program for approximately three years and, according to his QMRP, at Defendant TDMHMR's current pace he will likely be waiting another six or seven years for waiver services.

50.     Pursuant to Defendants' procedures, and according to Mr. Comacho's QMRP, he requested HCS waiver services in September 1999. When Mr. Comacho was admitted to his current placement, Defendant TDMHMR never evaluated him for HCS eligibility. Instead, Defendant TDMHMR put him on a waiting list.

51.     As of the filing of this complaint, Mr. Comacho is on the HCS waiting list. He has received no written notice from Defendant TDMHMR that the services he has requested are being denied or delayed.

52.     Mr. Comacho's MPR believes that he is appropriate for foster care services and that these services could be provided at a cost that is significantly less than his current ICF/MR placement.

**Micha Chastain**

53.     Micha Chastain, who is almost three-years-old, receives nursing services through the state's Comprehensive Care Program (CCP). CCP covers benefits for Medicaid eligible children. The nursing services he receives includes suctioning and monitoring his nebulizer and food pump.

54.     Micha is at risk of losing the CCP nursing services he currently receives. For two months this coming year, Micha's family income will exceed Supplemental Security

Income ("SSI") guidelines.  During these months, Micha will not receive any nursing services, placing him at significant risk for institutionalization.

55.    In January 2003, Micha's family expects to lose nursing services until February 2003.

56.    If Micha were receiving CLASS waiver services, he would not lose nursing services.

57.    Pursuant to Defendants' procedure, Micha requested CLASS waiver services in July 2000.  Defendant TDHS never evaluated him for CLASS eligibility but instead put him on a waiting list.  Micha's family was never informed that he may be entitled to ICF/MR services.

58.    As of the filing of this complaint, Micha is on the CLASS waiting list.  He has received no written notice form Defendant TDHS that the services he has requested are being denied or delayed.

59.    Micha has been on the waiting list for the Community Living Assistance and Support Services for approximately two years.  It is his mother's understanding that it could be another six or seven years before he becomes eligible for CLASS waiver services.

**Sue Ann Ortiz**

60.    Sue Ann Ortiz is 23 years-of-age and would like to leave her current ICF/MR placement.  She very much wants to move in to a shared living arrangement with a friend.  She also wants more financial independence.  Currently she works part-time at a fast food restaurant.  If she were in the HCS waiver program, she would have much greater access to more of her money.  Ms Ortiz also wants more freedom, independence, and privacy, all of

which are not available while she remains institutionalized.  However, under the current circumstances, this will not happen.

61.     Ms. Ortiz has been on the waiting list for HCS waiver services for approximately one year.  Her QMRP believes that it will take another eight years, at the state's current pace, for her to get waiver services.

62.     Pursuant to Defendants' procedures, and according to Ms. Ortiz's QMRP, Ms. Ortiz requested HCS waiver services.  When Ms. Ortiz was admitted to her current ICF/MR placement, Defendant TDMHMR never informed her that she may also be eligible for HCS waiver services.  As a result, she has lost four years seniority on the waiting list.

63.     As of the filing of this complaint, Ms. Ortiz is on the HCS waiting list.  She has received no written notice from Defendant TDMHMR that the services she has requested are being denied or delayed.

64.     Ms. Ortiz's QMRP believes that she is appropriate for foster care services and that these services could be provided at a cost that is significantly less than her current ICF/MR placement.

**AL**

65.     AL lives with her mother and father.  She attends high school and wants very much to remain at home with her family while attending school.  However, as she has aged, she has become a management problem for her parents.

66.     Every day AL's mother has to lift and transfer her from her wheelchair to her bed, the car, a chair, the bathroom, or the shower.  AL weighs approximately 140 pounds and her mother LL has to do this by herself.  As a result, her mother has experienced knee, neck,

and back problems.  In addition, when LL is not feeling well, AL nonetheless needs assistance.  This situation puts both AL's and her mother's health at risk.  LL is particularly concerned that AL will be injured in the bathroom because she is so unsteady and could fall and seriously injure herself at any point.

67.    On information and belief, AL is eligible for CLASS waiver services.

68.    Pursuant to Defendant TDHS' procedures, AL requested CLASS waiver services approximately seven years ago in 1995.  Defendant TDHS never evaluated her for CLASS eligibility, but instead placed her on a waiting list.  AL's family was never informed that she may be entitled to ICF/MR services for persons with related conditions.

69.    As of the filing of this complaint, AL is on the CLASS waiting list.  She has received no written notice from Defendant TDHS that services she has requested are being denied or delayed.  Moreover, it is AL's mother's understanding that it will be another seven years before AL becomes eligible for CLASS waiver services.

## V.  CLASS ACTION

70.    Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated pursuant to Rule 23(b)(1) & (2) of the Federal Rules of Civil Procedure. The class Plaintiffs seek to represent consists of all persons eligible to receive Medicaid waiver services, who have requested but not received waiver services with reasonable promptness.  Plaintiffs seek to represent these class members for purposes of injunctive and declaratory relief.

71.    A class action is proper pursuant to the Federal Rules of Civil Procedure 23(a). As evidenced above, this class is so numerous that joinder of all class members is

impracticable. The class consists of (a) approximately 24,000 persons who Defendants have identified as requesting services and living in the community and who need residential services in order to remain in the community and (b) approximately 11,000 residents who are institutionalized in an ICF/MR and who are eligible to be considered for the kind of residential services that will enable them become more fully integrated into the community.

72.     There are questions of law and fact that are common to members of the class. These questions include but are not limited to:

a)     Have Defendants failed to exercise professional judgement by neglecting to plan for the residential needs of Texans with mental retardation and developmental disabilities?

b)     Have Defendants failed to evaluate what is the most integrated residential setting appropriate for a class member who is served in an institutional settings such as an ICF/MR?

c)     Have Defendants failed to determine whether individuals with mental retardation and developmental disabilities who reside in an ICF/MR meet the essential eligibility requirements for habilitation in a community based setting?

d)     Have Defendants failed to determine whether individuals with mental retardation and developmental disabilities who reside in the community meet the essential eligibility requirements for habilitation in a community-based setting?

e)     Have Defendants failed to develop and implement a comprehensive, effective working plan for providing qualified persons with mental retardation and

developmental disabilities residing in an institution such as an ICF/MR in a less restrictive setting and a waiting list that moves at a reasonable pace?

f)   Have Defendants failed to develop and implement a comprehensive, effective working plan for providing qualified persons with mental retardation and developmental disabilities living in the community with a waiting list that moves at a reasonable pace and that prevents such persons from being unnecessarily institutionalized?

g)   Is Defendants's implementation of its Medicaid waiver program and its denial of equal access to waiver services rationally related to a legitimate state interest?

h)   Does the ADA prohibit unnecessarily segregated services for persons with mental retardation and developmental disabilities?

i)   Does the Due Process Clause protect the right to such residential services as will enable Plaintiffs to live in the community and avoid institutionalization?

j)   Are community residential services and placements necessary to prevent and remedy the harm experienced by the Plaintiffs?

73.   The claims of the named Plaintiffs are typical of the claims of the class as a whole. All individual members of the class have been or will be subjected to the same harm as Plaintiffs as a result of the actions of the Defendants.

74.   The Plaintiffs will fairly and adequately protect the interests of the entire class. Plaintiffs' counsel have litigated many other class actions in their careers.

75.   A class action is proper pursuant to Federal Rule of Civil Procedure 23(b)(1). Separate actions could create inconsistent and varying adjudications with respect to the

individual members of the class, which would establish incompatible standards of conduct for Defendants and adjudications with respect to other members would, as a practical matter, be dispositive to the interests of the other members not parties to the litigation.

76.    Moreover, Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole.  This satisfies Federal Rule of Civil Procedure 23(b)(2).

## VI.  STATUTORY FRAMEWORK

77.    Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, establishes Medicaid, a joint federal-state program to provide medical and related care to eligible persons.  Costs are shared between the federal and the state governments.

78.    States are not required to participate in Medicaid, but may do so by submitting an appropriate Medicaid plan to the Center for Medicare and Medicaid Services ("CMS"), formerly the Health Care Financing Administration ("HCFA").  Once a state elects to participate in Medicaid, it must do so in accordance with applicable federal statutes and regulations.

79.    For participating states, providing certain Medicaid services is mandatory. Other services can be provided at the decision of the state.  Once a state elects to provide an optional service, however, it must do so in accordance with Medicaid statutes and regulations governing the provision of that service.

80.    Title XIX requires that the state plan provide medical assistance "with reasonable promptness to all eligible individuals," 42 U.S.C. § 1396 (a)(8), and continue furnishing the service until the recipient is found to be ineligible to continue to receive

assistance. 42 U.S.C. § 1396a (a)(10). States must assure that care and services under the plan are provided in a manner consistent "with the best interests of the recipients." 42 U.S.C. § 1396a (a)(19).

81.    An optional service that states may elect to provide is an ICF/MR. 42 U.S.C. § 1396d (a)(15). An ICF/MR is a residential institution that provides appropriate health and rehabilitative services to eligible persons with developmental disabilities. 42 U.S.C. § 1396d(d).

82.    States that provide ICF/MR services may also implement a Medicaid waiver program. This alternative to ICF/MR services includes an array of home and community-based services for eligible recipients who, in the absence of waiver services, would require institutionalization in an ICF/MR. This Medicaid program is called a "waiver" because CMS waives certain technical obligations otherwise incumbent on Medicaid-participating states electing to participate in this program.

83.    Title XIX requires that when a state agrees to provide Medicaid waiver services that it provide assurances that, *inter alia*, individuals are evaluated for their need for the level-of-care provided by an ICF/MR, and if found eligible for such a level-of-care, are offered the option of Medicaid waiver services. 42 U.S.C. §§ 1396n(c)(2)(B), 1396n(c)(2)(C); 42 C.F.R. § 441.302(c)-(d). States must assure CMS that, absent the waiver, "recipients in the waiver would receive the appropriate type of Medicaid-funded institutional care . . . that they require." 42 C.F.R. § 441.302(g).

84.    Under a Medicaid waiver program, a state's estimate of average per capita costs cannot exceed the average per capita costs for the same level-of-care provided in

institutions in that state, 42 U.S.C. § 1396n(c)(2)(D). However, if actual expenses exceed the estimate in a particular case, the federal government will not withhold payment. 42 U.S.C. § 1396n(c)(9).

85. Medicaid Waiver services are generally far less expensive than institutional care.

86. Approval for Medicaid waivers that cover individuals with mental retardation and other developmental disabilities, requires the state assure CMS that "necessary safeguards . . . have been taken to protect the health and welfare of individuals provided services under the waiver." 42 U.S.C. § 1396n(c)(2)(A); 42 C.F.R. § 441.302(a).

87. Both the ICF/MR program and the Medicaid waiver program are public services subject to Title II of the ADA, 42 U.S.C. §§ 12161-12165.

88. Medicaid waiver recipients are entitled to medically necessary Medicaid services, i.e., those services necessary to ensure their "health and welfare," 42 U.S.C. § 1396n(c)(2)(A). The services are incorporated into the recipient's plan of care. 42 U.S.C. §§ 1396n(c)(1) and (c)(4)(B). Services received by recipients can vary as their circumstances change for better or worse. In some cases, relatively minor assistance may be required; in other cases, more services may be necessary.

89. Plaintiffs and the class they represent are currently entitled to services at the level-of-care provided at an ICF/MR and/or through the Medicaid waiver program.

90. Title II of the ADA, 42 U.S.C. §§ 12131-12134, extends to state and local governments the nondiscrimination provisions of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. It requires that the services, programs, and activities of state and

local governments be administered in "the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

91.     CMS has stated that based on the *Olmstead* decision and the requirements of Title II of the ADA that, "States are obligated to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. . . ."  CMS also concluded that under Medicaid it is the "State's responsibility, . . . to periodically review the services of all residents in Medicaid-funded institutional settings."

92.     CMS unambiguously interprets *Olmstead* to mean that a "[State's] requirement to provide services in the most integrated setting appropriate applies not only to persons already in institutional settings but to those being assessed for public institutionalization."

93.     The individual Plaintiffs are qualified individuals with disabilities, as defined by the ADA, 42 U.S.C. § 12131(2).  The waiver program is a public service program covered by Title II of the ADA.  Defendants are governmental entities covered by Title II of the ADA.

94.     The Due Process Clause of the United States Constitution prohibits Defendants from denying a beneficiary health services without adequate notice and opportunity for a fair hearing.

95.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits establishing, subsidizing, and otherwise sanctioning in *de jure* fashion enactments, programs, policies, and practices that exclude, separate, and segregate persons with mental retardation or developmental disabilities.

96.    The federal Medicaid statute and regulations require Defendants to provide notice and hearing rights to any person whose claims for medical assistance under the plan are denied or are not acted upon with reasonable promptness.  42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.200 *et seq.*

## VII.  THE HOME AND COMMUNITY-BASED WAIVER PROGRAM

97.    The Medicaid waiver program was adopted by Congress in order to allow individuals who would otherwise require care in a nursing home or ICF/MR to receive needed services in their own homes and in home-like settings.  42 U.S.C. § 1396n.  *See* Senate Report No. 97-139 and House Conference Report No. 97-208, 1981 U.S. CODE CONG. & ADMIN. NEWS 396.  The regulations state that "section 1915(e) [1396n] of the Act permits states to offer, under a waiver of statutory requirements, an array of home and community based services that an individual needs to avoid institutionalization." 42 C.F.R. § 441.300.

98.    Federal law provides that the average cost per person in the community through the Medicaid waiver program must not exceed the average cost for the same level of services in facilities or institutions.  42 U.S.C. § 1396n(c)(2)(D).

99.    Home and community-based waiver funds may not be used to support services to individuals who reside in an ICF/MR.  42 C.F.R. § 441.301(b)(1)(ii), 42 U.S.C. § 1396n.

100.    Under a Medicaid waiver, a state can provide an array of services, including services that are not identified in Title XIX as approved optional services.  42 U.S.C. § 1396n(c)(4)(B); 42 C.F.R. § 440.180.  For example, a state can provide habilitative services, vocational services, and respite services even though these services are not a specified optional service.  Thus, Medicaid waiver programs give the state the right to

receive federal reimbursement when it agrees to provide services that it would not otherwise be reimbursed for under Title XIX.

101.   Medicaid waiver programs allow states to "waive" certain Title XIX requirements. Specifically, a state's waiver program may choose to provide services to specific groups of persons or in a limited geographic region, this waiving comparability or statewideness requirements.  42 U.S.C. §§ 1396n(c)(3), (9)-(10).

102.   In sum, the purpose of Title XIX's Medicaid waivers is to encourage states to provide services to assist individuals with disabilities to avoid being institutionalized. 42 C.F.R. § 441.300.  And as long as Medicaid services vis-a-vis institutional services are "cost-neutral," the preference is to provide services in the community.   *See* 42 U.S.C. § 1396n(c)(2)(D).

103.   Texas has implemented two Medicaid waiver programs to meet the needs of persons with mental retardation and persons with related conditions.  For persons with mental retardation, the Medicaid waiver is called the Home and Community-Based Services ("HCS") Program, and for persons with related conditions, the Medicaid waiver is called the Community Living Assistance and Support Services ("CLASS") Program.

A.   **HCS Waiver**

104.   Texas has offered the HCS waiver since 1982.

105.   Individuals are eligible for HCS waiver services if they (a) have mental retardation, (b) meet the standard of care for services in an ICF/MR, and (c) are eligible for Medical Assistance.

106.   The HCS waiver currently serves approximately 4,608 recipients.

107.    There are approximately 17,500 who have requested HCS waiver services. And of those who have requested services, over 6300 are children. These individuals have been put on a waiting list.

108.    Defendant TDMHMR is the single state agency whose responsibility it is to administer the HCS waiver program.

109.    The services provided under the HCS waiver include case management, respite care, habilitation, minor home modifications, skilled nursing, adaptive aids, counseling and therapies, dental treatment, and residential assistance, i.e., supported home living, foster/ companion care, and residential support.

110.    The HCS waiver program waives Title XIX's comparability requirements and limits eligibility to persons with mental retardation but it does not waive Title XIX's state-wideness requirement.  Thus, HCS waiver services are available to persons with mental retardation statewide.

111.    In the absence of HCS waiver services these individuals are entitled to receive services in an ICF/MR.

**B.    CLASS Waiver**

112.    The CLASS waiver program has been available in Texas since 1991 for persons with related conditions.  A related condition is a developmental disability other than mental retardation which may include such conditions as cerebral palsy and spina bifida.

113.    Individuals are eligible for CLASS waiver services when (a) they have a related condition, (b) meet the standard of care for services in an ICF/MR, and (c) are eligible for Medical assistance.

114.    Approved by CMS, the CLASS waiver program currently serves approximately 1500 persons.

115.    There are approximately 7300 persons who have requested CLASS waiver services.  And of those who have requested services and placed on a waiting list, over 6100 are children.

116.    Defendant TDHS is the single state agency responsible for administering the CLASS waiver program.

117.    Services under the CLASS waiver program include case management, habilitation, respite, nursing services, psychological services, physical therapy, occupational therapy, speech pathology services, adaptive aids, and minor home modifications.

118.    The CLASS waiver program waives Title XIX's comparability requirements to limit eligibility to persons with related conditions and waives Title XIX statewideness requirement.  Thus, CLASS waiver services will not be provided statewide but only in a limited number of geographic catchment areas.

119.    In the absence of CLASS waiver services these individuals are entitled to receive services in an ICF/MR.

120.    Subsequent to the United States Supreme Court decision in *Olmstead*, the THHSC developed a plan to address the need for HCS waiver services; although CLASS waiver services were not included in THHSC's plan.

121.    Under THHSC's plan individuals with mental retardation residing in state schools and ICF/MR facilities with fourteen (14) beds may qualify for HCS waiver services.

122.   THHSC, however, has made no provision to provide HCS services to individuals living in a six-to-thirteen (13) bed ICF/MR, or to provide services to eligible individuals on the HCS waiting list living in the community.  As a result, the vast majority of individuals on the current waiting list for waiver services will never receive waiver services under the current system.

123.   Furthermore, on information and belief, THHSC has failed to comply with its plan to provide HCS services to all eligible individuals requesting such services and who live in an ICF/MR of 14 beds or more.

**C.     Implementation of HCS and CLASS Waiver Services**

124.   Federal Medicaid obligations and promises notwithstanding, Defendants have failed to provide necessary HCS waiver services to eligible individuals with mental retardation or CLASS waiver services to eligible individuals with developmental disabilities.

125.   Over 24,000 Texans with mental retardation or related conditions who have requested HCS and/or CLASS waiver services live in the community with caregivers who-- due to age, infirmity, or other responsibilities--are unable to provide them with needed services.  Due to repeated and chronic funding shortfalls, these individuals continue to wait for waiver services.

126.   In the meantime, Plaintiffs living at home or in the community continue to be at risk for being institutionalized.  The lack of habilitation, therapy, vocational services, and respite services means that many of these individuals are isolated at home and are without the ability to fully participate in community life and to maximize their potential.  In addition, due to advancing age, infirmity, and other responsibilities, the caregivers of many individuals

with mental retardation and related conditions who are awaiting services are increasingly unable to provide the care that they need and may have little choice but to resort to institutionalization.

127.    Similarly, for the 11,000 Texans with mental retardation and related conditions who are currently institutionalized in an ICF/MR and who are on the waiting list for HCS waiver services, Defendants repeated and chronic shortfalls in providing waiver services, along with their failure to provide many of these individuals with information about HCS and CLASS waiver services, has resulted in many ICF/MR residents waiting indefinitely for services in the most integrated setting.

128.    Furthermore, the denial of HCS and CLASS waiver services both in the community and in institutions deny eligible individuals, like the Plaintiffs, necessary services within a reasonable period of time--a separate violation of federal Medicaid requirements.

129.    Finally, denying HCS and CLASS waiver services to eligible Medicaid recipients, in turn, denies them the opportunity to have an individualized, person-centered placement in the community to the maximum extent practicable, as required by the ADA and its implementing regulations.

## VIII.  CAUSES OF ACTION

### Count I – Failure in Amount, Duration, and Scope

130.    Plaintiffs incorporate by reference all the paragraphs set forth herein.

131.    By their actions set forth above, Defendants' policies and practices violate federal requirements for an adequate amount, duration, and scope of ICF/MR-level services, including 42 U.S.C. § 1396a(a)(10), 42 C.F.R. § 440.200 *et seq.*

## Count II – Failure to Provide Choice of Services

132.   Plaintiffs incorporate by reference all the paragraphs set forth herein.

133.   By their actions set forth above, the Defendants have failed, and continue to fail, to provide eligible persons, including Plaintiffs, a choice between receiving the care they need in an institutional setting or receiving it through home and community-based services through the waiver program, in violation of 42 U.S.C. § 1983 and Title XIX of the Social Security Act, specifically 42 U.S.C. § 1396n(c)(2)(C).

## Count III – Failure to Provide an Opportunity to Apply

134.   Plaintiffs incorporate by reference all the paragraphs set forth herein.

135.   By their actions set forth above, Defendants refusal to accept applications from eligible Medicaid applicants, including Plaintiffs, denies these applicants the opportunity to apply for medical assistance in violation of 42 U.S.C. § 1396a(a)(8).

## Count IV – Failure to Provide Prompt Services

136.   Plaintiffs incorporate by reference all the paragraphs set forth herein.

137.   By their actions set forth above, Defendants have failed and continue to fail to provide reasonably prompt waiver services to eligible persons, including Plaintiffs, in violation of 42 U.S.C. § 1983 and Title XIX of the Social Security Act, specifically 42 U.S.C. § 1396a(a)(8).

## Count V – Violation of Equal Protection

138.   Plaintiffs incorporate by reference all the paragraphs set forth herein.

139.    By their actions set forth above, the Defendants have failed and continue to fail to provide Plaintiffs with equal protection regarding the provision of waiver services in violation of the Fourteenth Amendment of the United States Constitution.

## Count VI – Violation of Due Process

140.    Plaintiffs incorporate by reference all the paragraphs set forth herein.

141.    By their actions set forth above, the Defendants have failed and continue to fail to provide Plaintiffs with equal protection regarding the provision of waiver services in violation of the Due Process Clause of the United States Constitution.

## Count VII – Violation of the Americans with Disabilities Act

142.    Plaintiffs incorporate by reference all the paragraphs set forth herein.

143.    By their actions set forth above, the Defendants have failed and continue to fail to afford Plaintiffs with residential services in the most integrated setting appropriate to the needs of the individual with disabilities, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12115 *et seq.*, and the implementing regulations, 28 C.F.R. § 35.130(d).

## Count VIII – Violation of § 504 of the Rehabilitation Act of 1973

144.    Plaintiffs incorporate by reference all the paragraphs set forth herein.

145.    By their actions set forth above, Defendants have failed and continue to fail to afford Plaintiffs with residential services in the most integrated setting appropriate to the needs of the individual with disabilities, in violation of the Rehabilitation Act, 29 U.S.C. § 794.

## PRAYER

THEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:

A.    Certify this action as a class action;

B.    Issue declaratory judgment concluding that Defendants' conduct was wrongful and unlawful under the causes of action alleged herein;

C.    Grant injunctive and other equitable relief, including, but not limited to, an injunction prohibiting Defendant from engaging in the conduct alleged herein;

D.    Award Plaintiffs reasonable attorneys' fees, expenses, and costs of suit.

E.    Award Plaintiff all other such appropriate relief, either at law or in equity, as the Court may deem appropriate, just, and proper.

Dated:   September 4, 2002.

Respectfully submitted,

GEOFFREY N. COURTNEY
Attorney at Law
State Bar No. 00790514
3700 Enfield Road
Austin, Texas 78703
(512) 236-0875
(512) 236-0878 (Fax)

GARTH A. CORBETT
State Bar No. 04812300
ADVOCACY, INCORPORATED
7800 Shoal Creek Boulevard, Suite 171-E
Austin, Texas 78757-1014
(512) 454-4816
(512) 454-3999 (Fax)

ATTORNEY FOR PLAINTIFFS